UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EQUITY INDUSTRIAL A-ROCKVILLE LLC,<br>    *Plaintiff*, | )<br>)<br>) | |
| *vs.* | )<br>) | 1:09-cv-0621-SEB-JMS |
| 7900 ROCKVILLE, LLC, *et al.*,<br>    *Defendants.* | )<br>)<br>)<br>) | |

**ORDER**

Presently before the Court are two motions: Plaintiff Equity Industrial A-Rockville LLC's ("Equity") Motion to Compel, [dkt. 41], and Equity's Motion for Sanctions, [dkt. 57].[1]

**BACKGROUND**

This case involves a real estate deal gone bad. Equity bought a piece of real estate from Defendant 7900 Rockville, LLC ("Rockville"). Equity says that 7900 breached its obligations under the purchase-and-sale agreement to pay certain real estate taxes on the property. [*See* dkt. 83 ¶38.] When the time came to pay them, Equity alleges that 7900 claimed to have already distributed all its assets, leaving nothing to pay the taxes. [*Id.* ¶38] So Equity filed the present suit against both 7900 and Covington Capital Corporation ("CCC"), the latter of which Equity alleges is an "alter ego" of 7900 [*See id.* ¶45.] While the present motions were pending, Equity added 7900's members to this action, on the theory that they received fraudulent conveyances of 7900's assets that should have been used for the taxes. [*See* dkt. 67.]

---

[1] Equity's Addendum to Pending Motion to Compel, [dkt. 47], was incorrectly filed as a motion when it is merely a supplemental brief. That erroneously filed motion is therefore **TERMINATED** in light of the ruling on the Motion to Compel.

On October 19, 2009, Equity served interrogatories and document requests upon 7900 and CCC, discovery that was essentially designed to trace where the funds from the sale went. [*See* dkt. 41-1.]  By agreement, the discovery responses were due by December 3, 2009.  [*See* dkt. 41-3.]  Because of difficulties in obtaining the responsive documents, 7900 and CCC didn't respond by the deadline.  They (silently) waited until December 22, 2009 to serve their responses, responses which Equity now claims are woefully incomplete.

In response to the Motion to Compel, 7900 argues that it has given Equity all the documents that it and its third-party bookkeeper have.  [Dkt. 49 at 5.]  For its part, CCC argues that Equity isn't entitled to any information from it because the documents that 7900 has provided prove—despite the allegations in Equity's complaint to the contrary—that CCC never received any money from 7900.  [*Id.*]  Furthermore, CCC claims that it isn't even a legal entity capable of being sued, dooming Equity's chances of prevailing on the merits.  [Dkt. 49-1 at 6.]

CCC's arguments give rise to Equity's Motion for Sanctions.  Equity accuses CCC, and its counsel, of "repeatedly and knowingly l[ying] to [Equity's counsel], and in pleadings with this Honorable Court, in an attempt to prevent the discovery of [CCC's] involvement in the fraudulent transfers."  [Dkt. 50 at 8.]  To punish Defendants for their misdeeds, Equity requests a default judgment.  [Dkt. 57 at 13.]

## DISCUSSION

The Court will address the Motion to Compel before turning to the Motion for Sanctions.

### A. The Motion to Compel[2]

Equity has argued that Defendants' failure to timely respond to Equity's discovery precludes them from relying upon any objections to withhold documents or other information. Regarding interrogatory answers, the Federal Rules specifically provide that "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. Pro. 33(b)(4). Case law imposes similar consequences for a party's failure to timely object to document requests. *See, e.g.*, *Magalis v. Adams*, 2009 U.S. Dist. LEXIS 102739, *10 (C.D. Ill. 2009) (collecting cases); *Peterson v. Farrakhan*, 2005 U.S. Dist. LEXIS 46231, *7 (N.D. Ind. 2005) (calling the consequences of untimely objection "firmly established in this Circuit" and collecting cases).[3]

Defendants make three arguments about why "good cause" exists to excuse their inability to meet the December 3 deadline that they themselves proposed, [dkt. 41-3], none of which the Court finds sufficient.

First, they argue that Equity hasn't suffered any prejudice from their delay. While an absence of prejudice may be relevant to the good-cause analysis, *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. Ill. 2005) (applying Fed. R. Civ. Pro. 16(b)'s "good cause" standard), Equity has suffered some prejudice: delay associated with this Motion

---

[2] The later-briefed Motion for Sanctions contains additional evidence and argument, by both sides, on the merits of the Motion to Compel. Consistent with the principle that "[m]otion practice is not an exercise in trial and error or maybe-maybe not, where a party can reserve arguments to present later if earlier ones fail," *Brownstone Publ'g, LLC v. AT&T, Inc.*, 2009 U.S. Dist. LEXIS 25485, *7 (S.D. Ind. 2009) (quotation omitted), the Court will limit its consideration on the Motion to Compel to the arguments and evidence actually presented in that original motion.

[3] Defendants haven't attempted to argue here that they can withhold any documents or information on privilege grounds. The Court need not, therefore, consider the ill consequences of such a result in the good-cause inquiry. *See Senat v. City of New York*, 255 F.R.D. 338, 340 (E.D.N.Y. 2009) (holding that all non-privilege objections waived because of untimely answers).

to Compel. Even had CCC timely asserted objections, for reasons explained at the end of this section, Equity would have still been entitled to information and documents from CCC, but CCC didn't provide them in its tardy discovery responses.

Second, Defendants claim that their nineteen-day delay was short. But that delay, unaccompanied by any indication that Defendants were actually attempting to honor their December 3 deadline in the meanwhile, cautions against a finding of good cause. *See Stelor Prods., LLC v. Mendell*, 2008 U.S. Dist. LEXIS 104308, *4-6 (S.D. Ind. 2008) (finding lack of good cause, in part, where production occurred two weeks after agreed deadline).

Finally, Defendants contend that they included within their response documents obtained from "third-party accounting providers [to] 7900" and thus saved Equity from having to subpoena those entities. Because Defendants have only vaguely described those entities, however, the Court lacks sufficient information to decide whether Defendants were merely doing what they were already obligated to do: Provide information and documents within their possession and control. *See Triple Five v. Simon*, 212 F.R.D. 523, 527 (D. Minn. 2002) (requiring party to produce documents from its tax attorneys). Furthermore, Defendants' failure to honor their promise, made after the Motion to Compel was filed, to produce certain—already significantly overdue—responsive check ledgers and communications by February 12, 2010, [*see* dkt. 45, 47], significantly undermines their claims of attempting to exceed their discovery obligations. As of February 18, those documents were still overdue. [Dkt. 47.]

Thus, the Court finds that Defendants haven't established the good cause necessary to permit their tardy objections. Accordingly, Defendants must fully respond to Equity's discovery

requests and shall do so within **seven days**.[4]  To the extent that CCC argues that it is a non-entity or alternatively that the documents already produced show that Equity cannot prevail on an alter-ego theory, the Court warns CCC that—unless and until it is dismissed as a party—non-participation in discovery may subject the entity that appeared in this action to a default judgment.  *See* Fed. R. Civ. Pro. 37(b)(2)(A).  Further, to the extent that Defendants claim that responsive documents are located beyond their possession and control, they must indicate the custodian of those documents so that Equity may subpoena them.  *See Hobley v. Burge*, 433 F.3d 946, 952 (7th Cir. 2006).

### B.  Equity's Motion for Sanctions

With bombastic rhetoric, Equity asks the Court to sanction Defendants with a default judgment for their discovery misconduct.  Its argument is premised upon its belief that CCC faces liability for the transfers at issue in this action.  Equity has not, however, obtained a judgment in that regard, and CCC may ultimately prevail for any one of the reasons that it has offered.  Any sanction for misrepresenting CCC's involvement in the transactions is thus premature at this point.[5]

To the extent that Equity seeks the harsh sanction of dismissal for Defendants' failure to timely respond to discovery, such a sanction falls far beyond the range of appropriate sanctions for the type of discovery misconduct at issue here.  *Salgado by Salgado v. GMC*, 150 F.3d 735,

---

[4] The Court notes that, with respect to the requests to CCC, Equity has disclaimed any interest in obtaining information "about management of entirely unrelated properties with absolutely no relationship whatsoever with the 7900 property."  [Dkt. 41-4 at 2.]

[5] The Court notes that, in several respects, Equity rushed to file the Motion for Sanctions without having fully investigated the underlying facts.  For example, Equity's charge that Mr. Kavinsky "clearly [has] a longstanding relationship with, and knowledge of, both Covington and its relationship with 7900," [dkt. 57 ¶3], conflicts with Mr. Kavinsky's later-submitted affidavit that he only learned of 7900 in connection with this lawsuit and had no involvement in any of its previous transactional legal needs, [dkt. 61-1 ¶¶7-9].

- 6 -

740 (7th Cir. 1998) (explaining that "the sanction selected [for discovery misconduct] must be one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction."). In the absence of any argument for a more reasonable sanction, and given that Equity's status as a prevailing party on the Motion to Compel entitles it to recover fees, *see* Fed. R. Civ. Pro. 37(a)(5)(A), the Court won't consider other, lesser, sanctions.

Finally, to the extent that Equity contends that Defendants failed their duty of candor in the response to the Motion for Sanctions by misrepresenting applicable authority, the Court finds that Defendants' position, although ultimately incorrect, was not beyond the bounds of acceptable good-faith advocacy.

## CONCLUSION

The Motion to Compel is **GRANTED**. Defendants shall fully respond to Equity's discovery requests, [dkt. 41-1], within **seven days**. Unless the parties have already agreed upon the amount of fees by then, Equity shall file its fee petition for the Motion to Compel within **seven days**. Defendants may respond within **seven days** thereafter. No reply is necessary.

The Motion for Sanctions is **DENIED**. Each side shall bear its own fees and costs in connection with that motion.

04/27/2010

                                                               Jane Magnus-Stinson
                                                                United States Magistrate Judge
                                                                Southern District of Indiana

**Distribution via ECF only:**

Richard D. Gass
DIONNE & GASS LLP
rdg@dionnegass.com

Robert Andrew Hicks
HALL RENDER KILLIAN HEATH & LYMAN
One American Square
Suite 2000
Indianapolis, IN 46282

David Benjamin Honig
HALL RENDER KILLIAN HEATH & LYMAN
dhonig@hallrender.com

Keith A. Kavinsky
GALLAGHER & KAVINSKY, L.P.A.
kak@gallagherkavinsky.com